# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2366

_____

Baldeo Singh,                                    *
                                                 *
            Appellant,                           *
                                                 *    Appeal from the United States
      v.                                         *    District Court for the
                                                 *    District of Minnesota.
Kenneth S. Apfel, Commissioner of                *
Social Security,                                 *
                                                 *
            Appellee.                            *

_____

Submitted:  March 17, 2000

Filed:  August 21, 2000
_____

Before RICHARD S. ARNOLD, LAY, and BEAM, Circuit Judges.
_____

BEAM, Circuit Judge.

      Baldeo Singh appeals the district court's judgment affirming the denial of his application for Social Security disability benefits.  We reverse and remand.

## I.    BACKGROUND

Singh is a forty-five-year-old man with a high school education plus one year of training as a machinist. He has been employed as a janitor, laborer, school bus monitor and a machine operator. He worked consistently until he was involved in an automobile accident on September 10, 1992. Since then, he has been involved in two other automobile accidents, in 1993 and 1995, and also fell on ice and injured his back. Singh asserts that he has been unable to engage in substantial gainful activity since the first accident because of back pain, diabetes, headaches, frequent urination, and stomach problems.

Singh applied for disability benefits on August 23, 1994. His application was denied initially and on reconsideration. He then requested, and was granted, a hearing before an administrative law judge (ALJ). At the hearing, Singh testified that he has suffered from back and neck pain since his accident in 1992. He also stated that he has problems with balance and walks only with the aid of a cane. He testified that he can stand for only five minutes and cannot sit through an entire movie. His daily activities consist of eating, watching television, lying down and generally staying around the house. Singh had back surgery to remove a herniated disc in 1994. He testified that his pain worsened after the surgery and that he now suffers from numbness, weakness, and spasms in his legs.

A review of the medical evidence shows that Singh first sought medical treatment for severe back pain in September 1992, shortly after the first car accident. Since then, he has been treated by a neurologist, Dr. Lowell H. Baker, on a monthly basis. Singh has also had chiropractic treatments twice weekly and has had countless nerve blocks. Doctors' and nurses' notations indicate that Singh consistently reported that he suffered a great deal of pain (i.e., reports of "unbearable pain," "can't sit or lie down," "spending most of time in bed," "symptoms persist, flare" "lower back is terrible, can't sit, stand or lie down," "sharp shooting pain from lower back down to

feet," "symptoms increased," "headaches are terrible," and "neck is tight continuously"). Singh has also been treated for severe headaches, urinary frequency, peptic ulcer disease, and diabetes.

Singh was referred to a surgeon, Dr. Thomas Bergman, in 1994. Dr. Bergman's records indicate that Singh "simply [had] not gotten any better with all modes of conservative modalities including chiropractic treatments, exercise programs and injections." Dr. Bergman diagnosed "left S1 radiculopathy"[1] and recommended surgery. In June 1994, Singh underwent a lumbar microdiscectomy.[2] After the surgery, he continued to complain of severe pain. He was then diagnosed with persistent nerve root irritation. Epidural steroid injections were then recommended and Singh has received several of these injections.

Singh has undergone several diagnostic procedures. A CT scan before his surgery in 1994 revealed "a large left posterolateral disc herniation at L5-S1 results in compression of the thecal sac and left S1 nerve root." An MRI after the surgery showed "soft tissue change . . . consistent with granulation tissue/fibrosis" and "enhancement of the left sided nerve roots . . . consistent with nerve root irritation." An MRI in 1995 showed post-surgical changes, "small recurrent disc herniation with associated fibrous retraction of the left S1 nerve root" and "continued enhancement of the left S1 nerve root likely representing irritation of the nerve root."

Singh's treating neurologist, Dr. Baker, performed a Residual Functional Capacity (RFC) assessment on Singh. Dr. Baker stated that Singh should be limited

---

[1]Radiculopathy is a disease of the nerve roots. See Dorland's Illustrated Medical Dictionary 1404 (28th ed. 1994) (Dorland's) .

[2]A discectomy is the excision of an intervertebral disc. See Dorland's at 492. A microdiscectomy is "debulking of a herniated nucleus pulposus using an operating microscope or loupe for magnification." Dorland's at 1036.

to fifteen minutes of uninterrupted standing and two hours of standing, in total, per day and to one hour of uninterrupted sitting and two hours of sitting, in total, per day. Singh's treating chiropractor also performed an RFC assessment, and recommended essentially the same restrictions.

Singh's medical records were reviewed by Dr. Thomas Comfort and Dr. Robert Hammerstrom. Those doctors also completed RFC assessments. Dr. Comfort stated that Singh could perform medium work and Dr. Hammerstrom stated that Singh could perform light work. Dr. Andrew Steiner also reviewed Singh's medical records and testified at the hearing. He testified that Singh's impairments would limit him to performing sedentary work.

William Villa, a vocational expert, also testified at the hearing. He was asked whether a hypothetical individual with back pain, headaches, stomach problems, diabetes, and frequent urination, limited to sedentary work that allowed him to alternate positions, could find work in the national economy. Villa testified that such an individual could perform such sedentary jobs as a security system monitor, inspector or cashier. Villa also stated, however, that these jobs would not be available for a person who had to take frequent restroom breaks or for a person who could only sit for two hours out of an eight-hour shift.

After the hearing, the ALJ found Singh retains the residual functional capacity for sedentary work and denied his claim. The ALJ rejected Dr. Baker's RFC assessment as unreliable and unsupported by objective medical evidence. The ALJ stated "the assessment provides no objective medical basis for these restrictions on standing/walking and sitting . . . [and] appear[s] to be based almost exclusively on the claimant's allegations of pain." She similarly rejected Singh's subjective allegations of pain, stating "there is no basis for concluding that the claimant's pain rises to the level of disability." The Appeals Council affirmed the decision, as did the district court.

Singh appeals. He contends that the ALJ did not give appropriate weight to the opinion of his treating physician; did not credit his subjective complaints of pain; and failed to pose an appropriate hypothetical question to the vocational expert.

## II.  DISCUSSION

Under the Commissioner's regulations, the disability determination involves a step-by-step analysis of any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. See 20 C.F.R. § 404.1520(a); Braswell v. Heckler, 733 F.2d 531, 533 (8th Cir. 1984). If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. See Braswell, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy. See Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. See id. at 858.

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. See Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998). In determining whether existing evidence is substantial, we consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999).

We first consider Singh's contention that the ALJ failed to grant proper weight to the opinion of his treating neurologist, Dr. Lowell Baker. Dr. Baker restricted Singh to sitting for only two hours out of an eight hour day, and for only one hour without interruption. The ALJ, however, rejected Dr. Baker's opinion in favor of the evaluations of consulting physicians who had not examined Singh.

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. See Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir.1991). A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). By contrast, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." Id. Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. See Nevland, 204 F.3d at 858.

The record here is replete with evidence that substantiates the opinion of Singh's treating physician, Dr. Baker. Singh has consistently sought medical treatment for his pain and has undergone numerous procedures, including surgery, to alleviate the pain. His pain can be directly attributed to an objective finding–a diagnosis of persistent nerve root irritation and more recently, to a recurrent herniated disc. Dr. Baker's diagnosis and opinion are amply supported by clinical data. There is no evidence in the record to support the ALJ's residual functional capacity finding other than the non-treating physicians' assessments. These assessments alone cannot be considered substantial evidence in the face of the conflicting assessment of a treating physician. See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1991).

Also, Dr. Baker is a specialist, a neurologist, while the consulting physicians are not. The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. See Metz v. Shalala, 49 F.3d 374, 377 (8th Cir. 1995). In any event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations also provide that the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R § 404.1527(d)(2). The ALJ failed to do so. After first noting that Dr. Baker's opinion was based primarily on Singh's subjective complaints, she stated only that she "declines to accept portions of Dr. Lowell Baker's functional capacities assessment because it is unreliable and unsupported by objective medical evidence." For the reasons stated below, the ALJ's initial assumption on Singh's subjective complaints of pain is faulty. Moreover, the record shows that Dr. Baker's opinion is supported by medically acceptable clinical data. We thus find the ALJ's failure to properly credit the opinion of Singh's treating physician is error.

Furthermore, the ALJ failed to properly credit Singh's subjective complaints of pain, all of which were consistent with the objective medical evidence. Subjective complaints may be discounted if there are inconsistencies in the record as a whole. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (enumerating factors that ALJs should consider in making the determination). An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints. See Ghant, 930 F.2d at 637. The ALJ rejected Singh's allegations of disabling pain without discussing the Polaski factors. She acknowledged that Singh suffered from pain but emphasized "that there is no basis for concluding that the claimant's pain rises to the level of disability." She did not point to any specific inconsistencies in the record.

Our review of the record reveals no such inconsistencies. Singh's testimony regarding his daily activities–staying around the house, watching T.V., needing help to

shave, being unable to sit through an entire movie–are consistent with his complaints of disabling pain. This court has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity. See Kelley, 133 F.3d at 588-89.

A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications. See id. at 589. However, this is not the case with Singh. The record shows repeated and consistent visits to doctors. Singh presently takes, and has taken, numerous prescription medications.[3] He has availed himself of many pain treatment modalities including chiropractic treatments, nerve blocks, a TENS unit, and has undergone surgery and many diagnostic tests. Further, Singh is not an individual who lacks an impressive work record. See, e.g., Siemers v. Shalala, 47 F.3d 299, 301 (8th Cir. 1995) (noting unimpressive work record when discrediting subjective complaints). In short, there is nothing in this record to justify the rejection of Singh's complaints of disabling pain.

In view of our findings that the ALJ improperly rejected both the opinion of Singh's treating physician and Singh's subjective complaints of pain, we find that the hypothetical question posed to the vocational expert did not adequately reflect Singh's impairments. Accordingly, the testimony of the vocational expert that jobs exist for Singh cannot constitute substantial evidence on the record as a whole. See Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir. 1992).

---

[3]These include Parafon Forte, Wellbutrin, Relafen, Midrin, Quinine, Pamelor, Feldene, Trazodone, Nadolol, Piroxicam, Paxil, Diazepam, Propantheline, Glucotrol, and Prilosec.

## III.    CONCLUSION

Having found that the Commissioner has not met his burden of proving that Singh can perform other jobs in the national economy, we reverse the judgment of the district court affirming the Commissioner's decision.  The evidence supports a finding of disability.  Consequently, we reverse  and instruct the district court to remand to the Commissioner for an award of  benefits.  See Andler v. Chater, 100 F.3d 1389, 1394 (8th Cir. 1996) (if a claimant is disabled on the record, we may reverse and remand for entry of an order granting benefits).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.