# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1617
_____

Lisa Austin

*Plaintiff - Appellant*

v.

Kilolo Kijakazi, Acting Commissioner of Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern

_____

Submitted: September 22, 2022
Filed: November 1, 2022

_____

Before GRUENDER, SHEPHERD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Lisa Austin appeals the district court's[1] order upholding the Commissioner of the Social Security Administration's (Commissioner) denial of Social Security disability insurance benefits, arguing that the Commissioner's decision was not

---

[1]The Honorable Jerome T. Kearney, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

supported by substantial evidence.  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On March 27, 2018, Austin applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423, alleging a disability onset date of February 28, 2018.  The Social Security Administration denied her claim initially and again on reconsideration.  Austin then requested a hearing before an administrative law judge (ALJ), which was granted.

Austin suffers from several health impairments, including migraines, anxiety, and depression.  In February 2018, Austin quit her job as a school counselor primarily due to her migraines.  While she had been suffering from migraines for many years, she had controlled her symptoms through a variety of treatments, including Botox injections, nasal sprays, and oral medications.  After a successful trial, Austin received a surgically implanted spinal cord neurostimulator in April 2018.  Austin's symptoms improved after surgery, though she continued to seek treatment for recurrent headaches through at least July 2019.  The record does not document additional care for headaches.

While her migraines form the primary basis for her disability claim, Austin has also received treatment for depression and anxiety.  During visits with her primary care provider, Austin consistently denied anxiety or depression.  She has nevertheless received treatment for these conditions.  In October 2018, Austin visited Dr. Kristin Addison-Brown, a clinical neuropsychologist, for a psychological consultation.  Dr. Addison-Brown concluded that Austin had moderate, recurrent major depressive disorder, possible attention deficit hyperactivity disorder (ADHD), and a high risk for prescription drug abuse.  In January 2019, Austin visited Dr. Dennis Vowell, a licensed psychologist, for a second consultation.  Dr. Vowell diagnosed Austin with major depressive disorder but concluded that Austin had no significant limits in adaptive functioning.  Finally, in March 2019, Dr. Elizabeth

-2-

Bucolo, a state-agency psychological consultant, reviewed Austin's medical records and concluded that while Austin had significant medical problems, she remained able to perform light work with limited interpersonal contact.

After conducting a hearing, the ALJ denied Austin's claim for disability benefits. The ALJ considered Austin's hearing testimony and medical records and then engaged in the five-step disability evaluation required by 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Austin had not engaged in substantial gainful activity since February 28, 2018, the alleged onset date. At step two, the ALJ found that Austin had the following severe impairments: migraine headaches, an anxiety disorder, and a mood disorder. At step three, the ALJ found that Austin did not have an impairment that equaled, individually or in combination, the severity of one of the listed impairments. At step four, the ALJ found that Austin has the "residual functional capacity [RFC] to perform light work . . . [but] should avoid extreme cold and wetness, avoid work in direct sunlight, and avoid loud noises." In making this finding, the ALJ noted Austin's history of migraines but concluded that the surgically implanted neurostimulator together with continued medication resulted in "on-going symptom control without a consistent description of debilitating pain or the inability to function." Though Austin testified that her migraines formed the primary basis of her disability claim, the ALJ also considered Austin's history of treatment for depression and anxiety. The ALJ found Dr. Addison-Brown's assessment—which concluded that Austin had depression, significant cognitive deficits, and possible ADHD—unpersuasive because it was based on a limited treating relationship, relied heavily on Austin's own descriptions of her limitations, and was inconsistent with the rest of the record. The ALJ found the other medical opinions more persuasive, all of which described limited cognitive and social deficits. In particular, the ALJ relied on Dr. Vowell's assessment that Austin had no significant limits on social or cognitive functioning. Overall, the ALJ found that Austin "can perform simple, routine, and repetitive tasks as well as make simple, work-related decisions"; "can concentrate, persist[,] and maintain pace with normal breaks"; and "remains able to tolerate incidental personal contact with simple, direct, and concrete supervision." However, the ALJ found that this RFC

precluded Austin's past work as a school counselor. At step five, the ALJ found that there are jobs available in significant numbers in the national economy that Austin could perform, including price marker and cleaner-housekeeper. Accordingly, the ALJ concluded that Austin was not disabled from February 28, 2018, through February 5, 2020.

Austin sought review from the Social Security Administration Appeals Council, but the Appeals Council declined. Austin then filed a complaint in the district court, seeking review of the Commissioner's final decision. Before the district court, Austin argued that the Commissioner's decision was not supported by substantial evidence for three reasons: (1) the ALJ did not properly evaluate the medical evidence; (2) the RFC assessment did not incorporate all her limitations; and (3) the ALJ failed to consider Austin's past work experience. The district court affirmed the denial of benefits. Austin appeals.

## II.

Before us, Austin challenges two aspects of the Commissioner's decision. First, Austin argues that the ALJ committed legal error by improperly evaluating the medical evidence. Second, Austin argues that the ALJ's RFC assessment was unsupported by substantial evidence. "This [C]ourt reviews de novo a district court's decision affirming the denial of social security benefits." Kraus v. Saul, 988 F.3d 1019, 1023 (8th Cir. 2021). "Because the Appeals Council declined review, the ALJ's decision is the final decision of the Commissioner." Schmitt v. Kijakazi, 27 F.4th 1353, 1358 (8th Cir. 2022) (citation omitted). "This [C]ourt affirms 'if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole.'" Kraus, 988 F.3d at 1024 (citation omitted). Substantial evidence means "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." Id. (citation omitted). When reviewing for substantial evidence on the record as a whole, "[w]e must consider evidence in the record that fairly detracts from, as well as supports, the [Commissioner]'s decision." Schmitt, 27 F.4th at 1358 (first alteration in original)

-4-

(citation omitted). "However, we will not reverse the Commissioner's decision merely because we find that 'substantial evidence exists in the record that would have supported a contrary outcome.'" Id. (citation omitted). Rather, we will "disturb the [Commissioner]'s decision only if it falls outside the available zone of choice." Kraus, 988 F.3d at 1024 (citation omitted).

A.

Austin first argues that the ALJ improperly evaluated the opinions of two medical sources: Dr. Addison-Brown and Dr. Vowell. Under recently revised regulations,[2] the ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." Id. (citing 20 C.F.R. § 404.1520c(a)). Under the revised regulations, "treating physicians are [no longer] entitled to special deference." Id. (citing 20 C.F.R. § 404.1520c(a)).

Austin takes issue with the ALJ's finding that Dr. Addison-Brown's opinion—which concluded that Austin likely had depression, ADHD, and a high risk of prescription drug abuse—was unpersuasive. Specifically, Austin argues that the ALJ failed to conduct a proper persuasiveness analysis of Dr. Addison-Brown's opinion. However, we find no such error. Assuming without deciding that Dr. Addison-Brown's opinion is a "medical opinion" within the meaning of the

---

[2]The revised regulations apply to all claims filed on or after March 27, 2017, see 20 C.F.R. § 404.1520c, including Austin's. The parties do not dispute that the revised regulations apply here.

regulations,[3] the ALJ adequately analyzed the persuasiveness of Dr. Addison-Brown's opinion. On the "supportability" prong, see 20 C.F.R. § 404.1520c(c)(1), the ALJ found that Dr. Addison-Brown "relied heavily on the claimant's subjective description of her symptoms and limitations." While Dr. Addison-Brown conducted some diagnostic procedures during her evaluation, Dr. Addison-Brown's report states that at least some of her diagnoses were based on "self-report[s]," which supports the ALJ's finding. On the "consistency" prong, see 20 C.F.R. § 404.1520c(c)(2), the ALJ correctly noted that Dr. Addison-Brown's depression diagnosis was inconsistent with Austin's routine denials of depression and anxiety during her primary care visits. Moreover, Austin has not sought out additional mental health treatment beyond her consultations with Dr. Addison-Brown and Dr. Vowell. The ALJ also emphasized that Dr. Addison-Brown's evaluation was based on a single consultation and not a "treating relationship." Though treating physicians no longer receive special deference, Bowers, 40 F.4th at 875, a medical source's "[r]elationship with the claimant" may still be considered by the ALJ in evaluating the persuasiveness of a medical opinion, see 20 C.F.R. § 404.1520c(c)(3). In sum, the ALJ adequately evaluated the persuasiveness of Dr. Addison-Brown's opinion and had sufficient grounds to conclude that the opinion was unpersuasive. In any event, given that Dr. Addison-Brown's opinion does not discuss Austin's migraines, the primary basis for her disability claim, any legal error in the ALJ's analysis was harmless. See Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021) (finding harmless error

---

[3]The Commissioner argues that Dr. Addison-Brown's opinion is not a "medical opinion" and, for that reason, not subject to the persuasiveness analysis described in 20 C.F.R. § 404.1520c. The revised regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" related to the mental or physical demands of work. 20 C.F.R. § 404.1513(a)(2). Mere diagnostic statements or "judgments about the nature and severity of . . . impairments" are not "medical opinions," 20 C.F.R. § 404.1513(a)(3), and, therefore, not subject to 20 C.F.R. § 404.1520c. But because we find that the ALJ's persuasiveness analysis was legally sufficient and any legal error was harmless, we need not decide this question today.

when "case was not a close call" and further clarification "would not have significantly swayed the ALJ's decision").

Austin also argues that the ALJ improperly ignored a portion of Dr. Vowell's opinion that did not support the RFC assessment. Dr. Vowell concluded that Austin was "able to sustain a reasonable degree of cognitive efficiency," which the ALJ emphasized, but also noted that "in situations of mild to moderate stress it is likely [Austin] would have difficulty coping efficiently." Austin argues that the ALJ erroneously ignored the latter part of Dr. Vowell's report in concluding that the report supported the RFC assessment. However, the ALJ is free to accept some, but not all, of a medical opinion. See Mabry v. Colvin, 815 F.3d 386, 391 (8th Cir. 2016) (noting that the ALJ is "not required to accept every opinion given" but "must weigh all the evidence in the record"); Clay v. Barnhart, 417 F.3d 922, 930 (8th Cir. 2005) (noting that "it is the ALJ's role to resolve conflicts in experts' opinions," including "conflicts . . . internal to one expert's opinion"). And the ALJ is not required to "explicitly . . . reconcile every conflicting shred" of medical evidence. Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981); see also 20 C.F.R. § 404.1520c(b)(1) ("[The ALJ is] not required to articulate how [he] considered each medical opinion . . . from one medical source individually."). Here, the ALJ properly evaluated the persuasiveness of Dr. Vowell's opinion. The ALJ found that Dr. Vowell's opinion that Austin is "able to sustain a reasonable degree of cognitive efficiency" was supported by a mental status examination and was consistent with Austin's visits with her primary care doctor, which do not indicate prominent cognitive or social deficits. Further, Dr. Vowell's assessment emphasizes Austin's ability to function despite her limitations. Thus, the ALJ committed no legal error in evaluating Dr. Vowell's opinion and finding that it supported the RFC assessment.

Austin contends that this case is analogous to Walker v. Commissioner, Social Security Administration, 911 F.3d 550 (8th Cir. 2018), where we reversed a denial of disability benefits because the ALJ credited a non-treating physician's opinion over a treating physician's opinion without sufficient explanation. Id. at 553-54. Austin maintains that the ALJ made the same error here by crediting Dr. Vowell's

opinion over Dr. Addison-Brown's without sufficient explanation. But <u>Walker</u> is unhelpful for two reasons. First, neither Dr. Vowell nor Dr. Addison-Brown have a treating relationship with Austin. So, unlike <u>Walker</u>, there is no allegation here that the ALJ discredited the opinion of Austin's treating physician without explanation. More significantly, <u>Walker</u> involved the now-defunct treating physician rule, which required that the opinion of the claimant's treating physician receive "controlling weight" unless the ALJ provides "good reasons" for giving it less weight. <u>See</u> <u>id.</u> at 553. Under the revised regulations, this rule no longer applies. <u>See</u> <u>Bowers</u>, 40 F.4th at 875. Therefore, <u>Walker</u> is both factually and legally inapposite.

B.

Austin finally argues that substantial evidence does not support the ALJ's RFC assessment because it does not sufficiently account for Austin's continued limitations due to ongoing headaches. More specifically, Austin contends that the ALJ erred in concluding that Austin's surgically implanted neurostimulator largely controlled her migraine symptoms. "A claimant's RFC is 'the most' that the claimant can do in a work setting despite her limitations." <u>Schmitt</u>, 27 F.4th at 1360 (quoting 20 C.F.R. § 404.1545(a)(1)). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." <u>Id.</u> (alteration in original) (citation omitted). As above, we will not disturb an ALJ's RFC finding so long as it is supported by "substantial evidence in the record as a whole." <u>Id.</u> at 1361.

Here, the ALJ found that Austin had the RFC to "perform light work . . . ; except, she should avoid extreme cold and wetness, avoid work in direct sunlight, and avoid loud noises." Central to this finding was the ALJ's conclusion that Austin's surgically implanted neurostimulator resulted in "on-going symptom control without a consistent description of debilitating pain or the inability to function." Austin takes issue with this conclusion, but we hold that it is supported by substantial evidence. The record indicates that Austin reported improvement in

her headache pain two weeks after the neurostimulator surgery. Though Austin continued to complain about occasional headaches after the surgery, she also reported "significant improvement" in her symptoms. Moreover, the record does not document additional care for headaches past July 2019. A lack of evidence of treatment in the months prior to the hearing undermines Austin's claim of disabling headaches. See Moad v. Massanari, 260 F.3d 887, 892 (8th Cir. 2001) (noting that because claimant "had not sought treatment from any physicians in the seven months prior to the administrative hearing," her complaints of disabling pain were less credible).

The record also indicates that Austin still performs daily activities without significant disruption. According to Dr. Vowell, Austin is "capable of driving unfamiliar routes. She occasionally goes shopping alone. She is able to manage her finances. She is able to complete basic [activities of daily living] but takes frequent breaks when completing household chores." Performing these activities without significant disruption discredits Austin's subjective complaints of disabling pain and supports the ALJ's decision. See Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018) (finding that claimant's ability to "perform[] personal tasks, homework, and errands" discredited her testimony alleging that she is unable to work). Ultimately, substantial evidence supports the ALJ's conclusion that the neurostimulator has largely controlled Austin's symptoms.

Even so, the RFC assessment includes additional limitations that accommodate Austin's complaints of continuing headaches. Namely, the ALJ found that Austin could perform "light work" but should avoid extreme cold and wetness, direct sunlight, and loud noises. These limitations account for specific stressors that trigger Austin's headaches. Thus, Austin's argument that the RFC assessment does not reflect *any* specific limitations due to her continued headaches cannot succeed. Whether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and "it is not this Court's role to reweigh that evidence." Schmitt, 27 F.4th at 1361. We conclude that the ALJ's RFC assessment is within the "available zone of choice" provided by the

whole record, <u>Kraus</u>, 988 F.3d at 1024 (citation omitted).  Therefore, we must affirm.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____